LUTTIG, Circuit Judge,
dissenting:
I do not agree with the majority’s holding that the burden of proof in due process hearings conducted pursuant to the Individuals with Disabilities Education Act *457 (IDEA), 20 U.S.C. § 1415(f)-(g), should be borne by a disabled child’s parents, rather than by the school district that is charged with providing that child a “free appropriate public education,” 20 U.S.C. § 1412(a)(1)(A). Not only does the school district have the affirmative, statutory obligation under the IDEA to develop a suitable education program (IEP) for every disabled child, the school district is also in a far better position to demonstrate that it has fulfilled this obligation than the disabled student’s parents are in to show that the school district has failed to do so. Accordingly, I would hold that the school district — and not the comparatively uninformed parents of the disabled child— must bear the burden of proving that the disabled child has been provided with the statutorily-required appropriate educational resources.
The majority concludes otherwise based on the “normal rule of allocating the burden to the party seeking relief.” Ante at 453. As even it admits, however, this so-called “rule” is, in actuality, merely a presumption and not a very strong one at that. Relying on McCormick on Evidence, the majority explains that, “[a]lthough ‘the natural tendency is to place the burden[ ] on the party desiring change’ or seeking relief, other factors such as policy considerations, convenience, and fairness may allow for different allocation of the burden of proof.” Ante at 452 (quoting McCormick on Evidence § 337).
Each of these “other factors” — policy, convenience and fairness- — -weigh against the assignment of the burden of proof to the parents in this case. To begin with, the policies behind the IDEA indisputably argue in favor of placing the burden of proof with the school district. As the Supreme Court has explained,
[t]he Act represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress’ perception that a majority of handicapped children in the United States “were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to ‘drop out.’ ”
Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (brackets in original). In the service of this effort, the IDEA obligates school districts to provide every disabled child with an educational program that is reasonably responsive to that child’s disability. Id. at 188-89, 102 S.Ct. 3034. The IDEA also requires school districts to involve the parents of the disabled child in the formulation of educational plans made in response to the child’s particular disability and to receive and consider the suggestions of parents in the development of those plans. In light of these affirmative obligations, the most reasonable, though by no means irrebuttable, presumption is that the school district should bear the burden of proof in the due process hearings required by the Act as well.
The majority suggests otherwise by comparing the obligation of school districts under the IDEA to that of defendants in civil rights claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination Act. See ante at 453. Because defendants in civil rights claims have a statutory obligation to refrain from discrimination but do not bear the burden of proof in claims against them, the majority reasons that the school districts’ obligation under IDEA should not compel it to bear the burden of proof either. Ante at 453. The analogy is not apt. Unlike the civil rights statutes referenced by the majority, the IDEA does not merely seek to *458 remedy discrimination against disabled students, it imposes an affirmative obligation on the nation’s school systems to provide disabled students with an enhanced level of attention and services. See Rowley, 458 U.S. at 189, 102 S.Ct. 3034 (explaining that “the face of the statute evinces a congressional intent ... to require the States to adopt procedures which would result in individualized consideration of and instruction for each [disabled] child”) (emphasis in original). And it is this affirmative obligation (rather than the Act’s purpose of remedying discrimination) that weighs most heavily in favor of placing the burden of proof in due process hearings on the school district.
Turning next to the interests of convenience and fairness, it is apparent that the school district possesses a distinct, inherent advantage over the parents of disabled children in assessing the feasibility and the likely benefit of alternative educational arrangements. While individual parents may have insight into the educational development of their own children, they lack the comprehensive understanding of the educational alternatives available to disabled children in the school district that officials of the school system possess. And, even more importantly, the parents lack the means to assess the likely benefit of available alternatives. Parents simply do not have, and cannot easily acquire, the cumulative, institutional knowledge gained by representatives of the school district from their experiences with other, similarly-disabled children.
The majority recites, at length, the services and protections provided to parents under the IDEA, but the mere recitation of these provisions does nothing more than highlight Congress’ awareness that parents of disabled children operate at a disadvantage when they seek to contest the individualized educational placement developed by their school district. It certainly does not show that Congress has “leveled the playing field” between the school district and the parents. These procedural protections may invest parents with a basis to understand the characteristics of their child’s disability and may even provide some understanding of the relative benefits and drawbacks of the educational plan proposed by the school district. But, even in the rosiest of scenarios, the provision of such remedial protections and services would not begin to impart to the average parent the level of expertise or knowledge that the school district possesses as a matter of course.
The majority may well be correct that the assignment of the burden of proof to the party with the “bigger guns” is not “automatic.” However, with only a faint, general presumption in favor of placing the burden of proof on the complainant on the other side of the equation, the fact that the party with the “bigger guns” also has better access to information, greater expertise, and an affirmative obligation to provide the contested services can hardly be ignored. Indeed, in my judgment, the collective weight of each of these considerations is dispositive.
I fear that, in reaching the contrary conclusion, the majority has been unduly influenced by the fact that the parents of the disabled student in this case have proven to be knowledgeable about the educational resources available to their son and sophisticated (if yet unsuccessful) in their pursuit of these resources. If so, it is regrettable. These parents are not typical, and any choice regarding the burden of proof should not be made in the belief that they are. For the vast majority of parents whose children require the benefits and protections provided in the IDEA, the specialized language and technical educational analysis with which they must familiarize themselves as a consequence of *459 their child’s disability will likely be obscure, if not bewildering. By the same token, most of these parents will find the educational program proposed by the school district resistant to challenge: the school district will have better information about the resources available to it, as well as the benefit of its experience with other disabled children. With the full mix of parents in mind, I believe that the proper course is to assign the burden of proof in due process hearings to the school district.
I respectfully dissent.